UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| GREGORY CHAMPION, | ) |
| Plaintiff, | ) ) ) |
| v. | ) No. 07 C 6070 |
| EXECUTIVE DIRECTOR GODINEZ, et al., | ) ) ) |
| Defendants. | ) |

## MEMORANDUM OPINION AND ORDER

Plaintiff, an inmate in the custody of the Cook County Department of Corrections, has brought this *pro se* civil rights action pursuant to 42 U.S.C. § 1983. Plaintiff claims that Defendants, correctional officials and health care providers at the jail, violated Plaintiff's constitutional rights by acting with deliberate indifference to his serious medical needs. Specifically, Plaintiff contends that he was denied prompt and proper medical care for a staph infection and for excruciating headaches. Three of the Defendants–Dr. Andrew Ting, Paramedic Victoria Furlow, and Quality Improvement Coordinator C. Smith–have moved for summary judgment. For the reasons stated in this order, the motion is granted in part and denied in part.

Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Jackson v. Kotter*, 541 F.3d 688, 697 (7th Cir. 2008). In determining whether factual issues exist, the court must view all the evidence and draw all reasonable inferences in the light most favorable to the non-moving party. *Lee v. Young,* 533 F.3d 505, 509 (7th Cir. 2008). Rule 56(c) requires that the court grant a motion for summary judgment if, after adequate time for discovery, "a party . . . fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will

bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.  Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial.  *Johnson v. Doughty*, 433 F.3d 1001, 1009-10 (7th Cir. 2006), citing *Rogers v. City of Chicago*, 320 F.3d 748, 752 (7th Cir. 2003).

## **FACTS**

Defendants filed a statement of uncontested material facts pursuant to Local Rule 56.1 (N.D. Ill.).  Together with their summary judgment motion, Defendants served on Plaintiff the required notice under Local Rule 56.2, explaining the requirements of the Local Rules and warning Plaintiff that his failure to respond with appropriate evidentiary support could result in entry of judgment against him.  (Document No. 49, Notice to Pro Se Litigant.)  Despite the warning, Plaintiff has not submitted a statement of contested facts supported by citations to the record; instead, he simply states his opposition to certain facts.  Unsupported statements in a brief are not evidence and cannot be given any weight.  *See Smith v. Lamz*, 321 F.3d 680, 683 (7th Cir. 2003) (failure to controvert the facts as set forth in the moving party's statement results in those facts being deemed admitted; mere disagreement is inadequate if made without reference to specific supporting material).  Because Plaintiff is proceeding *pro se*, the court will consider the factual assertions he makes in his brief, but only to the extent that Plaintiff could properly testify about the matters asserted at trial–that is, only with respect to those facts within Plaintiff's personal knowledge.  *See* FED. R. EVID. 602.  The following facts, gathered from Defendants' statement of facts, Plaintiff's deposition testimony, and his opposing brief, are therefore deemed undisputed for purposes of this motion:

Plaintiff Gregory Champion is a pretrial detainee, incarcerated at the Cook County Jail at all times relevant to this lawsuit. (Fourth Amended Complaint, p. 4.)  Defendant Victoria Furlow is a jail paramedic, trained in first aid and basic lifesaving aid.  (*Id.*, p. 2; Defendants' Exhibit 3 to Reply Brief, Affidavit of Victoria Furlow, ¶ 3.)  Defendant Andrew Ting is a staff physician at the

2

jail. (Fourth Amended Complaint, p. 2.) Defendant C. Smith is the quality control coordinator for Cermak Health Services. (Defendants' Exhibit 2, Affidavit of C. Smith, ¶ 1.) Defendant Deputy Bradshaw is a Cook County correctional officer. (Fourth Amended Complaint, p. 2.)[1]

On February 8, 2007, three boils erupted on Plaintiff's head. (Defendants' Exhibit 1, Plaintiff's Deposition, p. 13.) The boils were "extremely painful" and, when they burst open, they oozed a mixture of pus and blood. (*Ibid.*) Plaintiff showed the boils to an officer (originally identified as Bradshaw but now recognized as having the last name Singletary), who promised to make arrangements for Plaintiff to go to the jail dispensary but who apparently never followed through. (*Id.*, p 16.) When Plaintiff repeated his request to Singletary twice more over the next two weeks, the officer informed Plaintiff that he had "already made that call," and that he was waiting for someone to come and escort Plaintiff to the dispensary. (*Id.*, pp. 16-17.)

Although Defendant Furlow made the rounds of Plaintiff's housing division several times a week, Plaintiff did not show her his boils until near the end of March 2007. (Plaintiff's Dep., p. 18.) When Plaintiff showed her the boils, she advised him, as he recalls, "Okay, we'll get to it; just wash it, don't be scratching it." (*Id.*, p. 19.)

On April 2, 2007, Plaintiff filed a grievance complaining that he had been requesting Bacitracin antibiotic ointment for his boils for two months, to no avail. (Smith Affidavit, ¶ 12; Exhibit 2-A to Affidavit.) Defendant Smith, whose title is "Continuous Quality Improvement Coordinator," reviews jail detainee grievances regarding their medical care. (*Id.*, ¶ 2.) Because Plaintiff was seeking medication, Smith forwarded the grievance to the patient care services unit for follow-up. (Smith Affidavit, ¶ 12; Exhibit 2-B.) Smith him/herself had no authority to schedule medical appointments or provide medication, and never refused to provide help or assistance to Plaintiff. (*Id.*, ¶ 13.)

---

[1] Defense counsel's efforts to identify and locate Defendant Bradshaw were unsuccessful. Plaintiff now identifies the officer in question as a Deputy Singletary. *See* discussion, *infra.*

A day or two later (around April 3, 4, or 5, 2007), Defendant Furlow escorted Plaintiff to the health care unit. (*Id.*, p. 19.) Furlow checked Plaintiff's blood pressure, listened to his heartbeat with a stethoscope, and cleaned the boils with a sterilized gauze pad and Betadine antiseptic. (*Ibid.*) To Furlow's eye, Plaintiff had simply a "common boil" that needed only to be cleaned and dressed. (Defendants' Exhibit 3 to their Reply Brief, Affidavit of Victoria Furlow, ¶ 7.) Soon thereafter, the boils did begin to close up and heal, but, because, as it turned out, Plaintiff had a staph infection, whenever one boil healed, another would appear somewhere else. (Plaintiff's Deposition, p. 19-20.) Plaintiff nevertheless concedes that Furlow never specifically refused to provide medical treatment. (*Id.*, p. 24.)

On June 4, 2007, Defendant Ting diagnosed Plaintiff with a staph infection. (*Id.*, pp. 31-32.) Ting prescribed antibiotics (namely, Rifampin and Bactrim) to treat the infection, and the condition cleared up "completely" within fourteen days after Plaintiff began receiving the antibiotics. (*Id.*, pp. 32-34.) Plaintiff described Ting's treatment of his staph infection as "wonderful." (*Id.*, pp. 41-42.) At the same visit with Ting, however, Plaintiff requested headache medication, but did not receive it, apparently as the result of an accidental oversight on Ting's part. (*Id.*, pp. 37-38, 41-42.)

Despite submitting repeated request slips, Plaintiff did not begin receiving blood pressure medication or the pain medication Naproxen for his headaches until October 5, 2007, about four months later. (*Ibid.*; Plaintiff's Response to Document no. 12 (#56), p. 1.) During the four-month time period that Plaintiff lacked any prescribed headache medication, he was forced to barter with other detainees, trading his dinner trays for pain medication. (Plaintiff's Response to Defendants' Statement of Uncontested Facts, ¶ 19.)

4

## DISCUSSION

**I.     Defendants' Motion for Summary Judgment**

Defendants Smith, Furlow, and Ting seek summary judgment, arguing that no material facts are in dispute and that they are entitled to judgment as a matter of law. As explained below, the court concludes that Smith was not responsible for the provision (or denial) of medical care at the Cook County Jail, and that the care provided by Furlow satisfies constitutional requirements. The record requires further development, however, on Plaintiff's claim of deliberate indifference on the part of Dr. Ting.

The Due Process clause prohibits deliberate indifference to the serious medical needs of a pretrial detainee. *Jackson v. Illinois Medi-Car, Inc.*, 300 F.3d 760, 764-65 (7th Cir. 2002); *Qian v. Kautz*, 168 F.3d 949, 955 (7th Cir. 1999). Deliberate indifference in the medical context has both an objective and a subjective element: the inmate must have an objectively serious medical condition, and the correctional official or health care provider must be subjectively aware of and consciously disregard the medical need. *Farmer v. Brennan*, 511 U.S. 825, 837 (1994); *Estelle v. Gamble*, 429 U.S. 97, 103-04 (1976); *Sherrod v. Lingle*, 223 F.3d 605, 610 (7th Cir. 2000).

The Constitution is violated only if prison officials are inattentive to an objectively serious medical condition. *Hayes v. Snyder*, 546 F.3d 516, 522 (7th Cir. 2008); *Brownell v. Figel*, 950 F.2d 1285, 1289-92 (7th Cir. 1991). Under the Seventh Circuit's standard, "[a] serious medical need is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would perceive the need for a doctor's attention." *Greeno v. Daley*, 414 F.3d 645, 653 (7th Cir. 2005), *citing Foelker v. Outagamie County,* 394 F.3d 510, 512-13 (7th Cir. 2005). Indicatons of a serious medical need include "'[t]he existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the

5

existence of chronic and substantial pain.'" *Hayes*, 546 F.3d at 522-23, *quoting Gutierrez v. Peters*, 111 F.3d 1364, 1373 (7th Cir. 1997). These standards guide the court's consideration of Plaintiff's claims regarding the treatment for his medical problems.

### 1. Staph Infection/Boils

For purposes of this motion, the court assumes that Plaintiff's boils amounted to a serious medical need: Plaintiff describes an "extremely painful" condition involving oozing pus and blood. Although this condition is serious enough to implicate the Constitution, Plaintiff has not demonstrated that any of the Defendants he properly named and served acted with deliberate indifference to the condition. Deputy Singletary, the only individual who reportedly took no action in response to Plaintiff's medical request, was not named as a Defendant. (Plaintiff's motion for leave to substitute Singletary as a Defendant is discussed below.)

Defendant Smith cannot be held liable for any delays in medical care. When Plaintiff's grievance crossed Smith's desk, Smith forwarded it to the jail's Patient Care Services unit for follow-up. (Smith Affidavit, ¶ 12; Exhibit 2-B.) Smith had no authority to schedule medical appointments or provide medication (*id.*, ¶ 13), but Plaintiff acknowledges that he was seen at the health care unit either the day he filed his grievance or within a day or two thereafter. (Plaintiff's Deposition, p. 19.) In fact Plaintiff concedes that Smith never personally refused to provide help or assistance. (*Id.*, ¶ 13; see also Plaintiff's Response to Defendants' Answer (document no. 52, at p. 2: "I agree C. Smith has no responsibility in 07 C 6070").)

The case law supports this conclusion. In *Burks v. Raemisch*, 555 F.3d 592 (7th Cir. 2009), a prisoner sued a grievance counselor, among others, for denying him needed medical care. The Seventh Circuit upheld the district court's dismissal of claims against the grievance officer "because she carried out her job exactly as she was supposed to." 555 F.3d at 595. "The Governor, and for that matter the Superintendent of Prisons and the Warden of each prison, is entitled to relegate to the prison's medical staff the provision of good medical care . . . That is equally true for an inmate complaint examiner." *Burks*, 555 F.3d at 595, citing *Johnson v.*

6

*Doughty*, 433 F.3d 1001, 1011 (7th Cir. 2006). Smith, whose only role was to examine and route Plaintiff's grievance, is similarly not responsible for any inaction regarding Plaintiff's medical treatment.

Nor can Defendant Furlow be held liable for acting with deliberate indifference under the facts of this case. Even assuming that Plaintiff's boils were serious, they did not appear to be objectively serious to Furlow. Only unaddressed injuries that a layperson would consider serious enough to require a physician's care and attention are actionable under 42 U.S.C. § 1983. *Hayes, supra*, 546 F.3d at 523; *Henderson v. Sheahan*, 196 F.3d 839, 846 (7th Cir. 1999). Furlow, who is not a medical doctor, assessed Plaintiff's scalp affliction as a "common boil." *See* Furlow Affidavit, ¶¶ 3, 4, and 7. Plaintiff himself testiified that although Furlow visited his housing tier several times per week, he did not show his scalp condition to her for more than a month after the boils broke out. (Plaintiff's Deposition, p. 18.)

When he did seek treatment for the first time, Furlow briefly examined Plaintiff's head and told him, essentially, that the boils were not a serious problem. (*Id.*, p. 19.) A few days later, she reexamined Plaintiff's head more closely, then cleaned the boils with antiseptic. (*Ibid.*) Very soon thereafter, the wounds on Plaintiff's head healed. (*Id.*, p. 20.) Though Furlow evidently initially failed to discover that the boils were caused by a more serious staph infection, she did provide care to the extent of her training and abilities. No reasonable person could find that Furlow's treatment "'was so inadequate that it demonstrated an absence of professional judgment, that is, that no minimally competent professional would have so responded under those circumstances.'" *Johnson*, 433 F.3d at 1013, quoting *Collignon v. Milwaukee County*, 163 F.3d 982, 989 (7th Cir. 1998).

Nor is Defendant Ting properly held liable for deliberate indifference to the boils. As he did with Defendant Smith, Plaintiff conceded in his deposition that Defendant Ting treated his staph infection "wonderfully" and successfully. (Plaintiff's Deposition, p. 42.) Plaintiff has

7

essentially confessed the motion as to Ting with regard to the treatment of his boils, clarifying that he is suing Ting only for his alleged failure to address Plaintiff's headaches. (*Id.*, p. 41.)

In sum, the two-month delay in treating Plaintiff's boils cannot be attributed to any of the movng Defendants. Their motion for summary judgment on this claim is granted.

### 2. Headaches

The record is less clear with respect to Plaintiff's headaches. First, the court is unable to determine from the record whether the headaches amounted to a serious medical need. In *Henderson v. Sheahan*, 196 F.3d 839, 846 (7th Cir. 1999), the Seventh Circuit concluded that breathing problems, chest pains, dizziness, sinus problems, and headaches due to exposure to second-hand smoke were "not sufficiently serious to be constitutionally actionable." *See also Reed v. McBride*, 178 F.3d 849, 853 (7th Cir. 1999), quoting *Cooper v. Casey*, 97 F.3d 914, 916 (7th Cir. 1996) ("a prison medical staff's refusal to 'dispense bromides for the sniffles or minor aches and pains or a tiny scratch or a mild headache or minor fatigue . . . does not violate the Constitution'"). In this case, however, Plaintiff describes his headaches as "excruciating." Severe headaches, if left untreated, may be severely painful, even to the point of disability. *See Look v. Heckler*, 775 F.2d 192, 193 (7th Cir. 1985). The subjective element of deliberate indifference encompasses conduct such as the refusal to treat a prisoner's chronic pain, *Walker v. Benjamin,* 293 F.3d 1030, 1040 (7th Cir. 2002), the refusal to provide pain medication prescribed by a doctor, *Gil v. Reed*, 381 F.3d 649, 661 (7th Cir. 2004), or erroneous treatment based on a substantial departure from accepted medical judgment, practice, or standards. *Johnson,* 433 F.3d at 1013.

Dr. Ting is correct that he cannot be held liable simply for neglecting to prescribe headache medication at the June 2007 consultation. Although Plaintiff now hedges, he admitted in his deposition that Ting's failure to prescribe headache medication appeared to be an inadvertent oversight. (Plaintiff's Deposition, p. 37.) In examining prisoner claims of deliberate indifference, the court considers the totality of the inmate's care. *See Gutierrez v. Peters*, 111

F.3d 1364, 1374 (7th Cir.1997) (finding no deliberate indifference where the inmate "repeatedly received treatment over [a] ten-month period and . . . at most he experienced an isolated occasion or two where he did not receive prompt treatment"). At the time of his health care visit, Plaintiff's principal concern was to address his boils. In the context of Plaintiff's overall treatment for his more serious medical problem, the staph infection, a failure to prescribe headache medication on a single occasion did not rise to the level of a Fourteenth Amendment violation. *Gil*, 381 F.3d at 662. Even if Ting was negligent in failing to prescribe headache medication, medical malpractice is not actionable under 42 U.S.C. § 1983. *Greeno v. Daley*, 414 F.3d 645, 653 (7th Cir. 2005).

In opposing Defendants' motion for summary judgment, Plaintiff asserts that Ting made comments to him that reflect Ting's indifference to his pain; specifically, Plaintiff now asserts that Ting told Plaintiff he should have purchased ibuprofen in the commissary when he had money in his trust account. (Plaintiff's Response to Defendants' Motion for Summary Judgment, Document no. 52, p. 1., ¶ 4.) Plaintiff made no mention of this episode at his deposition, however, and the court notes that it is inconsistent with his sworn testimony that it appeared that Ting simply forgot to prescribe pain medication. For purposes of this motion, therefore, the court will not consider Plaintiff's belated assertions about Ting's alleged callous remark. "[P]arties cannot thwart the purposes of Rule 56 by creating 'sham' issues of fact with affidavits that contradict their prior depositions . . . . If such contradictions were permitted . . . 'the very purpose of the summary judgment motion–to weed out unfounded claims, specious denials, and sham defenses–would be severely undercut.' " *Ineichen v. Ameritech*, 410 F.3d 956, 963 (7th Cir. 2005), quoting *Bank of Illinois v. Allied Signal Safety Restraint Sys.*, 75 F.3d 1162, 1168-69 (7th Cir. 1996).

If Plaintiff's claim rested solely on the June 2007 visit, Ting would be entitled to summary judgment. Plaintiff has suggested, however, that he continued to suffer from headaches even after that visit. If his suffering lasted for several months on account of the denial of headache

9

medication, and if Ting was personally responsible for the denial of needed medication during the time period in question, he may be liable for Plaintiff's injuries. The record will require further development concerning the severity of Plaintiff's headaches, to whom and how he requested headache and/or pain medication, and whether Ting was aware of Plaintiff's situation after the June 2007 appointment. As to Plaintiff's claim that Ting denied him headache medication over the course of several months, Defendants' motion for summary judgment is denied without prejudice.

**II.     Fourth Defendant**

The fourth named Defendant, Bradshaw, did not join the motion for summary judgment, as he has never been served. Defense counsel has been unable to identify or locate Defendant Bradshaw, for whom there is no record of employment at the Cook County Jail. (*See* Minute Entry of July 1, 2008 [33].) Moreover, Plaintiff failed to respond to the court's directive "to provide further information concerning Defendant Bradshaw, including a physical description, to assist the Sheriff's Office in identifying this individual." (*Id.*) Instead, in a motion for reconsideration filed March 10, 2009 [81], Plaintiff identified the deputy in question as having the name Singletary, not Bradshaw. Accordingly, Plaintiff is ordered to show good cause in writing why the fourth amended complaint should not be dismissed as to Bradshaw for lack of personal jurisdiction over that individual or, in the alternative, as a misnamed Defendant. Failure to show cause within fourteen days of the date of this order will result in summary dismissal of Bradshaw as a Defendant.

Plaintiff's motion for reconsideration of his request for leave to file a fifth amended complaint is likewise denied. Plaintiff seeks to substitute "newly discovered" Deputy Singletary, Badge #9110, as the officer who refused him access to medical care on February 14 and 15, 2007. The statute of limitations for Section 1983 actions filed in Illinois is two years, however. *See* 735 ILCS § 5/13-202; *Henderson v. Bolanda*, 253 F.3d 928, 931 (7th Cir. 2001), *citing Ashafa v. City of Chicago*, 146 F.3d 459, 462 (7th Cir. 1998). Because Plaintiff waited until March

10, 2008–more than two years after his claim accrued–to identify Singletary, it is now too late to name him as a Defendant in relation to the alleged denial of access to medical treatment in February 2007.

Plaintiff cannot avail himself of FED. R. CIV. P. 15(c)'s provisions allowing for "relation back" to the original complaint. In this circuit, a Plaintiff cannot invoke the relation back principles of Rule 15(c) to replace a misidentified Defendant after the statute of limitations has expired. *See Hall v. Norfolk Southern Ry.* Co., 469 F.3d 590 (7th Cir. 2006); *Worthington v. Wilson*, 8 F.3d 1253, 1256-57 (7th Cir. 1993); *Baskin v. City of Des Plaines*, 138 F.3d 701 (7th Cir. 1998). As a result, Plaintiff's motion for reconsideration of leave to file an amended complaint must be denied as futile.

## **CONCLUSION**

For the foregoing reasons, Defendants' motion for summary judgment [46] is granted in part and denied in part. Defendants Smith and Furlow are dismissed from this case. The case will proceed only against Ting, and only on the claim that Plaintiff was denied headache medication for several months. Plaintiff's motion in opposition to Defendants' brief opposing the filing of the fifth amended complaint and his motion for reconsideration [80, 81] are denied. Within fourteen days, Plaintiff is ordered to show cause in writing why the fourth amended complaint should not be dismissed as to Defendant Bradshaw for want of service and as a misnamed Defendant. Failure to do so will result in summary dismissal of this case as against Defendant Bradshaw.

ENTER:

Dated: July 6, 2009

_____
REBECCA R. PALLMEYER
United States District Judge

11